UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| TERRY LOU WALBURG, | ) | |
| --- | --- | --- |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 3:06-CV-155 |
| | ) | (VARLAN/SHIRLEY) |
| STATE OF TENNESSEE, MAXIMUS, INC., | ) | |
| and JOYCE, MEREDITH, FLITCROFT | ) | |
| & NORMAND, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**<u>MEMORANDUM OPINION</u>**

This civil action is before the Court on three motions: (1) a Second Motion to Dismiss filed by the State of Tennessee, Gina Lodge in her official capacity, and Gerald F. Nicely in his official capacity ("the State defendants") [Doc. 20]; (2) a Second Motion to Dismiss filed by the law firm Joyce, Meredith, Flitcroft & Normand, attorney M. Lynn Rogers, and attorney Carol Guthrie ("the firm defendants") [Doc. 29]; and (3) a Motion to Dismiss filed by Maximus, Inc. ("Maximus") [Doc. 7].[1] Plaintiff has responded to each motion [Docs. 11, 22, 31]. The Court has carefully considered the pending motions and the related pleadings in light of the applicable law. The Court will address each of the arguments made by the various defendants as to why plaintiff's claim against them should be dismissed.

---

[1]The State defendants' and the firm defendants' first motions to dismiss were denied as moot by order of this Court [Doc. 32] on December 4, 2006.

I.      **Relevant Facts**

The facts of this case are taken from plaintiff's amended complaint [Doc. 19]. On November 10, 2004, the Anderson County Chancery Court entered an order requiring that the driver's license of plaintiff, Terry Lou Walburg, be revoked pursuant to Tenn. Code. Ann. § 36-5-701 because she was in arrears in paying child support in the amount of $2,220.00. [Doc. 19, Ex. 1.] Maximus, a Virginia corporation, is under a contract with the State of Tennessee to collect child support in Anderson County, Tennessee. The firm defendants, a law firm and two attorney members with an office in Anderson County, Tennessee, are the Title IV-D attorneys for the Seventh Judicial District of the State of Tennessee. As such, they were charged with enforcing the Anderson County Chancery Court's order and therefore contacted the Tennessee Department of Safety in order to have plaintiff's driver's license revoked.

In June 2005, plaintiff learned that her driver's license had been suspended when she visited the law offices of the firm defendants for a conference concerning her child support. She alleges that until this point, she had never been notified of the license suspension and argues that this failure to provide notice is in direct contravention of the statute through which her license was revoked, Tenn. Code Ann. § 36-5-701 *et seq.* Tenn. Code Ann. § 36-5-706(b) provides the following:

> The licensing authority shall notify, without undue delay, by regular mail, an obligor certified from the department...that the obligor's application for the issuance, renewal or reinstatement of a license has been denied or that the obligor's current license has been suspended or revoked because the obligor's

> name has been certified by the department as an obligor who is not in compliance with an order of support.

Plaintiff alleges that the defendants' failure to adhere to this statutory notice requirement resulted in a deprivation of her right to due process in violation of the Fourteenth Amendment of the United States Constitutional and Article I, §§ 2 and 8 of the Tennessee Constitution.

Plaintiff filed suit in this Court pursuant to 42 U.S.C. § 1983 ("§ 1983"), seeking compensatory and punitive damages against defendants for the alleged violation of her constitutional right to due process. Plaintiff also seeks an injunction compelling defendants to adhere to the notice requirement of Tenn. Code Ann. § 36-5-706(b) in the future.

## II. Analysis

### A. Standard of Review

A motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). All well-pleaded allegations must be taken as true and be construed most favorably toward the non-movant. *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 855 (6th Cir. 2003). While a court may not grant a Rule 12(b)(6) motion based on disbelief of a complaint's factual allegations, *Lawler v. Marshall*, 898 F.2d 1196, 1199 (6th Cir. 1990), the court "need not accept as true legal conclusions or unwarranted factual inferences." *Morgan*

*v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). Consequently, a complaint will not be dismissed pursuant to Rule 12(b)(6) unless there is no law to support the claims made, the facts alleged are insufficient to state a claim, or there is an insurmountable bar on the face of the complaint.

    B.    <u>Sovereign Immunity</u>

        1.    *State of Tennessee Defendants*

The State defendants argue that plaintiff's claim against them should be dismissed on the grounds that they are immune from suit under the Eleventh Amendment. [Doc. 21.] Plaintiff argues that the doctrine articulated by the Supreme Court in *Ex Parte Young*, 209 U.S. 123, 159-60 (1908), allows plaintiff to pursue her claim for money damages and injunctive relief against the State defendants. [Doc. 22 at 1-2.]

The Eleventh Amendment to the Constitution provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. This amendment has long been interpreted to include immunity as to suits against a state by one of its own citizens. *Hans v. Louisiana*, 134 U.S. 1, 13-15 (1890); *Dubuc v. Michigan Bd. of Law Examiners*, 342 F.3d 610, 615 (6th Cir. 2003); *Barton v. Summers*, 293 F.3d 944, 948 (6th Cir. 2002); *MacDonald v. Village of Northport, Michigan*, 164 F.3d 964, 970 (6th Cir. 1999).

The State of Tennessee is immune from plaintiff's claim unless one of three exceptions applies. First, a state may consent to suit. *Barton*, 293 F.3d at 948. The State of Tennessee has not waived its immunity to suit for claims under § 1983. *Berndt v. State of Tennessee*, 796 F.2d 879, 881 (6th Cir. 1986). Second, Congress may expressly abrogate the state's immunity in legislation pursuant to its powers under the Fourteenth Amendment. *Barton*, 293 F.3d at 948. The Supreme Court has held that § 1983 does not abrogate a state's Eleventh Amendment immunity. *Quern v. Jordan*, 440 U.S. 332, 341 (1979). Third, the Eleventh Amendment does not bar suits for prospective relief against a state official to prevent future constitutional violations. *Barton*, 293 F.3d at 948. In the present case, plaintiff is seeking monetary compensation, or retrospective relief, as well as an injunction for prospective relief. Accordingly, there is no exception to the doctrine of Eleventh Amendment immunity which would subject the State of Tennessee to suit for plaintiff's claim under § 1983. Furthermore, *Ex Parte Young* does not abrogate the State of Tennessee's sovereign immunity, as that the doctrine applies only to state officials sued in their official capacity for prospective declaratory or injunctive relief. *See Rossborough Mfg. Co. v. Trimble*, 301 F.3d 482, 489 (6th Cir. 2002); *Nelson v. Miller*, 170 F.3d 641, 646-47 (6th Cir. 1999). Thus, the State defendants' motion to dismiss the State of Tennessee will be granted.

The individual defendants, Lodge and Nicely, have been sued in their official capacities: defendant Lodge in her capacity as Commissioner of the Tennessee Department of Human Services and defendant Nicely in his capacity as Interim Commissioner of the

Tennessee Department of Safety. [Doc. 19 at ¶¶ 4a-4b.] To the extent that these defendants are sued in their official capacities for monetary relief, such actions are in essence claims against the State. *Edelmen v. Jordan*, 415 U.S. 651, 663 (1974); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) ("a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. ...As such, it is no different from a suit against the State itself."); *MacDonald*, 164 F.3d at 970 ("A suit against a state official is barred when the action in essence seeks to recover money from the state, because 'the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity.'") (quoting *Edelman v. Jordan*, 415 U.S. 651, 663 (1974)); *Turker v. Ohio Dep't of Rehabilitation & Corrections*, 157 F.3d 453, 456 (6th Cir. 1998) ("It is well-established that a plaintiff cannot sue a state agency or any of its employees in their official capacities for monetary damages."). Again, plaintiff's argument that *Ex Parte Young* applies to allow her to seek money damages from defendants Lodge and Nicely fails and does not prevent dismissal of those claims. Accordingly, plaintiff's claim for monetary relief against defendants Lodge and Nicely are also barred by the Eleventh Amendment and will be dismissed. However, defendants Lodge and Nicely are subject to suit in their official capacity for the injunctive relief plaintiff seeks. *Will*, 491 U.S. at 71; *Wolfel v. Morris*, 972 F.2d 712, 718-19 (6th Cir. 1992); *Sutton v. Evans*, 918 F.2d 654, 657 (6th Cir. 1990).

Accordingly, the state defendants' motion to dismiss will be denied as to plaintiff's claim for injunctive relief against defendants Lodge and Nicely.[2]

### 2. *The Firm Defendants*

The firm defendants argue that, as Title IV-D attorneys representing the State of Tennessee, they are entitled to immunity under the Eleventh Amendment. [Doc. 30 at 6.] Aside from commenting that the firm defendants "appear to be taking a position that the Eleventh Amendment protects them from any action," [Doc. 31 at 4], plaintiff has not directly addressed this argument in her response.

Eleventh Amendment immunity can apply to entities which are determined to be an arm, alter ego, or political subdivision of the state. *Mt. Healthy Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977); *Hutsell v. Sayre*, 5 F.3d 996, 999 (6th Cir. 1993). To determine whether an entity is an arm of the state, courts have traditionally considered multiple factors, including: (1) whether the state would be responsible for a judgment against the entity in question; (2) how state law defines the entity; (3) what degree of control the state maintains over the entity; and (4) the source of the entity's funding. *S.J. v. Hamilton County, Ohio*, 374 F.3d 416, 420 (6th Cir. 2004).

Aside from the bare assertion that their status as Title IV-D attorneys and resulting involvement with the Tennessee Department of Human Services entitles them to sovereign

---

[2] In denying the state defendants' motion to dismiss as to defendants Lodge and Nicely, the Court is expressing no opinion as to whether plaintiff's claim against these officials could survive a motion for summary judgment. Instead, taking plaintiff's allegations as true for the purposes of the motion to dismiss, the Court is unable to conclude that these facts are insufficient to state a claim.

immunity, the firm defendants present no facts supporting their argument that should be accorded Eleventh Amendment immunity. Therefore, at this juncture, the Court does not have enough evidence before it to meaningfully analyze whether sovereign immunity can be extended to the firm defendants. Accordingly, the firm defendant's motion to dismiss on this ground will be denied.

    C.    Absolute Immunity

The firm defendants also argue that plaintiff's claim against them should be dismissed because they are entitled to absolute immunity, specifically, quasi-judicial immunity and prosecutorial immunity. [Doc. 30 at 2-4.] Plaintiff does not address this argument in her response. At the outset, the Court notes that for the purpose of determining whether the firm defendants are subject to absolute immunity, the Court will assume, but is not determining, that the firm defendants, as private actors, can be held liable under § 1983.

Absolute immunity is available to certain officials sued in their individual capacities under § 1983 when it is demonstrated that such immunity is essential for the conduct of their public business. *Butz v. Economou*, 438 U.S. 478, 507 (1978). The Supreme Court has recognized several categories of officials who can avail themselves to absolute immunity, but has been hesitant to enlarge the number of situations to which recognized immunities apply. *Buckley*, 509 U.S. at 269. "Only after careful inquiry into considerations of both history and policy has the Court construed § 1983 to incorporate a particular immunity defense." *Duncan v. Peck*, 844 F.2d 1261, 1264 (6th Cir. 1988). Even when it does so, the Court has flatly stated that it "will not recognize an immunity available at common law if § 1983's

history or purpose counsel against applying it in § 1983 actions." *Tower v. Glover*, 476 U.S. 914, 920 (1984).

On the basis of this rationale cautioning against expansion of the immunity doctrine, the Sixth Circuit has denied the application of both absolute and qualified immunity to private defendants sued under § 1983, *Duncan*, 844 F.2d at 1264, an approach the Supreme Court endorsed with its decision in *Wyatt v. Cole*, 504 U.S. 158 (1992). There, the Supreme Court denied any kind of immunity to private defendants in § 1983 cases on the grounds that absolute immunity for private individuals and entities was neither firmly rooted in common law, nor supported by the strong public policy reasons underlying judicial, prosecutorial, and trial witness immunity. *Wyatt*, 504 U.S. at 164-65. The Court further noted that "although public prosecutors and judges were accorded absolute immunity at common law," such protection does not flow to those who merely "set the wheels of government in motion by instigating a legal action." *Id.* (citing *Malley v. Briggs*, 475 U.S. 335, 340-41 (1986)).

By requesting that the Tennessee Department of Safety suspend plaintiff's driver's license pursuant to the Anderson County Chancery Court order, [Doc. 30 at 3-4], the firm defendants put into motion the process through which plaintiff's license was suspended. The firm defendants were therefore the literal instigators of the chain of events which led to the constitutional violation plaintiff alleges in this lawsuit and in this way, fall squarely into the category of private actors to which the Supreme Court and the Sixth Circuit have determined absolute immunity does not apply. *Wyatt*, 504 U.S. at 164-56; *Todd v. Weltman, Weinberg & Reis Co., L.P.A.*, 434 F.3d 432, 445 (6th Cir. 2006).

9

Furthermore, the Court finds the facts of this case analogous to those in *Todd v. Weltman, Weinberg & Reis Co.*, which involved a plaintiff suing a law frm under § 1983 for violations of the Fair Debt Collection Practice Act arising from an allegedly false affidavit the defendant law firm filed to commence a proceeding to garnish plaintiff's bank account. 434 F.3d at 435. Much like the plaintiff's claim in *Todd*, plaintiff's § 1983 claim here against the firm defendants stems from the allegedly inappropriate way in which the process suspending plaintiff's license was carried out. In *Todd*, the Sixth Circuit followed the reasoning of *Wyatt* and determined that the private law firm defendant was not entitled to absolute immunity, and noted that "[t]he Court reserves absolute immunity for individuals when they functionally serve as 'integral parts of the judicial process,' such as judges, advocates, and witnesses in their ordinary judicial roles." 434 F.3d at 447 (quoting *Briscoe v. LaHue*, 460 U.S. 325, 335 (1983)). Because the law firm in *Todd* had not played such a role but had instead only instigated the legal action about which plaintiff was complaining, the Sixth Circuit did not accord the firm absolute immunity. *Id.* at 444-45.

The Court sees no reason to depart from this well-trod path and agrees with the Sixth Circuit that the purpose of absolute immunity "is to preserve the integrity of our judicial system, not to assist a self-interested party" who allegedly did not follow the statutorily prescribed procedure in suspending plaintiff's driver's license. Accordingly, the firm defendants are not entitled to absolute immunity from plaintiff's suit and their motion to dismiss on this ground will be denied.

D.  Failure to Assert Protected Right

The firm defendants further argue that plaintiff's claim against them should be dismissed because she has failed to allege that one of her fundamental rights has been violated, and in this way, has not stated a claim upon which relief can be granted. [Doc. 30 at 5-6.] The firm defendants contend that for plaintiff to establish liability under § 1983, she "must assert a fundamental right which was denied because of the alleged due process violation." [*Id.* at 6.] Plaintiff argues that she is not alleging that one of her fundamental rights has been violated, but that her right to procedural due process was denied when the firm defendants failed to follow Tenn. Code Ann. § 36-5-706(b) when suspending her driver's license. [Doc. 31 at 3.]

There are different types of claims that can be brought under the Due Process Clause of the Fourteenth Amendment pursuant to 42 U.S.C. § 1983. A plaintiff may bring a suit for the deprivation of a specific protection found in the Bill of Rights. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). A plaintiff may also bring a claim based on the absence of fair procedure, namely, a violation of procedural due process. With this second type of claim, what is unconstitutional is not the deprivation by state action of a constitutionally protected interest, but the deprivation of liberty or property rights without due process of law. *Parratt v. Taylor*, 451 U.S. 527, 537 (1991). Therefore, to state a claim for denial of procedural due process, a plaintiff must show that a property or liberty right or interest – but not necessarily a fundamental right – has been implicated. *E.g., Bd. of Regents v. Roth*, 408 U.S. 564, 576-76 (1977) (noting that "[p]roperty interests, of course, are not created by the Constitution;

11

Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law...."); *Connecticut Bd. of Pardons v. Dumschat*, 452 U.S. 458, 465 (1981) ("[t]he ground for a constitutional claim, if any, must be found in statutes or other rules defining the obligations of the [state] authority....").

As plaintiff makes clear in her response to the firm defendants' motion to dismiss, [Doc. 31 at 3], it is the second of these two due process claims that plaintiff is alleging. Specifically, plaintiff states that she "alleges that the defendants failed to follow T.C.A. § 36-5-701, *et seq.*, when her driver's license was suspended, and that procedure constitutes a guaranteed due process right...." [*Id.*] While the firm defendants may be correct that possession of a driver's license is not a fundamental right under the Fourteenth Amendment, that argument is not applicable to this case because plaintiff has not alleged a violation of substantive due process. Thus, the firm defendants' motion to dismiss on this ground will be denied.

      E.    *Rooker-Feldman* Doctrine

Maximus and the firm defendants argue that plaintiff's claim against them should be dismissed because the Court does not have jurisdiction to hear the claim by virtue of the *Rooker-Feldman* doctrine. [Doc. 8 at 7-8; Doc. 30 at 7.] Plaintiff argues that she "is not complaining of injuries caused by a state-court judgment, and is not asking this Court to review and reject such a judgment," and that the *Rooker-Feldman* doctrine is therefore inapplicable to this case. [Doc. 11 at 3.]

Where a plaintiff's complaint filed in federal court amounts to nothing more than a challenge to a state court judgment against them, the action is barred by the *Rooker-Feldman* doctrine. *Tropt v. Fidelity Nat'l Title Ins. Co.*, 289 F.3d 929, 937 (6th Cir. 2002). The doctrine applies to bar federal adjudication of claims that are inextricably intertwined with a lower state court proceeding. *In re Sun Valley Foods Co.*, 801 F.2d 186, 189 (6th Cir. 1986). The Supreme Court has reasoned that a district court's exercise of jurisdiction over such claims is tantamount to appellate review of the state court, but only the Supreme Court has such appellate jurisdiction. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923).

The *Rooker-Feldman* doctrine does not, however, bar federal jurisdiction over every claim involving the decision of a state court. Specifically, if the claim in question challenges the constitutionality of the lower state court proceedings itself, the claim is not barred by the *Rooker-Feldman* doctrine. *Todd*, 434 F.3d at 436; *Howard v. Whitbeck*, 382 F.3d 633, 639 (6th Cir. 2004). That is precisely the situation presented by plaintiff's case. Here, plaintiff is not seeking to have the Court review the Anderson County Chancery Court's order regarding plaintiff's child support payment obligations. As plaintiff herself attests, she "openly and candidly admits that the child support order...is a valid court order. She is not seeking to challenge that order in any way." [Doc. 11 at 2.] Rather, plaintiff argues that defendants – not the Anderson County Chancery Court – did not follow the notice requirement of Tenn. Code Ann. § 36-5-706(b) in suspending her driver's license and in that way, violated her right to procedural due process. [Doc. 19 at ¶¶ 19, 22.] Furthermore, she is not, as defendant Maximus argues [Doc. 8 at 7-8], seeking to have the Court set aside that

order or prevent the issuance of all such orders in the future. While plaintiff is seeking an injunction, the Court notes that this injunction is sought to compel defendants to adhere to the procedural guidelines for license suspensions set forth in Tenn. Code Ann. § 36-5-706(b) in the future. [Doc. 19 at ¶ 58.]

As the Supreme Court recently held, the *Rooker-Feldman* doctrine is one of limited applicability: it is confined to cases where a party who lost in state court brings an action complaining of injuries caused by the state court judgment. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 125 S. Ct. 1517, 1521-22 (2005). In the case at bar, plaintiff is not complaining of injuries sustained as a result of the Anderson County Chancery Court order. She is instead challenging the way in which that order was subsequently carried out. As such, her claim is not barred by the *Rooker-Feldman* doctrine, *e.g., Todd*, 434 F.3d at 437, and therefore, Maximus's and the firm defendants' motions to dismiss on that ground will be denied.

F. Domestic Relations Exception

Maximus and the firm defendants argue that because plaintiff's claim involves child support, it should be dismissed on the basis that the domestic relations exception prevents the Court from having jurisdiction over the claim. [Doc. 8 at 6-7; Doc. 30 at 7.] Plaintiff contends that while this case arose out of a domestic relations action in state court, "it is not about domestic relations" and therefore should not be dismissed through that exception. [Doc. 11 at 1.]

The domestic relations exception precludes federal courts from exercising jurisdiction over cases whose substance is essentially domestic relations. *Popovici v. Agler*, 280 U.S. 379, 383 (1930); *Firestone v. Cleveland Trust*, 654 F.2d 1212, 1215 (6th Cir. 1981). Like the *Rooker-Feldman* doctrine, the domestic relations exception to a federal court's jurisdiction is one that applies to a narrow set of circumstances. The Supreme Court has held that the exception is limited to cases involving issuances of divorce, alimony, or child custody decrees; it does not extend to other related issues simply because domestic relations considerations are implicated. *Ankenbrandt v. Richards*, 504 U.S. 689, 703-04 (1992). For the domestic relations exception to apply to a case, the case must be a "'core' domestic relation case, seeking a declaration of marital or parental status." *Catz v. Chalker*, 142 F.3d 279, 291 (6th Cir. 1998). Cases involving "a constitutional claim in which it is incidental that the underlying dispute involves a divorce" or another type of domestic relation matter, however, are not considered to be such core cases. *Id.*

Maximus cites an Eastern District of Tennessee case correctly applying the domestic relations exception. In *Beard v. Schulten*, the plaintiff filed a complaint seeking, among other things, to have the federal district court modify standing child support orders and a divorce decree previously entered by a Tennessee state court. 2005 WL 1263062 at *2 (E.D. Tenn. May 27, 2005). There, that Court held that the domestic relations exception barred adjudication of whether the plaintiff was denied due process of law because it would "necessarily [require] the Court to examine the substance of the divorce, child support, and custody matters." *Id.* at *3. By contrast, plaintiff's allegations of due process violations in

this case do not require a declaration of rights by the Court as to the child custody claim underlying plaintiff's case.

The Court finds that the Sixth Circuit's decision in *Catz* is more analogous to this case than is the *Beard* case. In *Catz*, the plaintiff filed a § 1983 action against his former wife and her attorneys alleging that they deprived him of due process through their actions in an Arizona state divorce proceeding. 142 F.3d at 283. The Sixth Circuit determined that the domestic relations exception did not apply to the case and in so determining, held that the exception is not applicable where a plaintiff is simply asking a federal court "to examine whether certain judicial proceedings, which happen to involve divorce, comported with the federal constitutional guarantees of due process." *Id.* at 291-92. Like the plaintiff in *Catz*, plaintiff here "is not asking the district court to involve itself in the sort of questions attendant to domestic relations that are assumed to be within the special expertise of state courts." *Id.* at 291.

Maximus and the firm defendants advocate that the Court should broadly apply the domestic relations exception in a way that was explicitly rejected by the Sixth Circuit in *Catz* when it stated that the exception cannot be expanded to apply to "every case touching and concerning the issuance of a divorce, the award of alimony, or a child custody decree." *Id.* at 292 n. 14. This is such a case that touches upon matters of domestic relations, but, given that it fundamentally concerns itself with whether a particular statutory process was followed, is not the type of case where the Court would be required to embroil itself in matters better suited to adjudication in state court. *See Ankenbrandt*, 504 U.S. at 704. Accordingly, the

Court finds that the domestic relations exception ought not apply to result in dismissal of plaintiff's claim against Maximus and the firm defendants. Thus, Maximus's and the firm defendants' motions to dismiss on this ground will be denied.

**III.  Conclusion**

For the reasons set forth herein, the Court finds as follows:

1. The Second Motion to Dismiss filed by the State of Tennessee, Gina Lodge in her official capacity, and Gerald F. Nicely in his official capacity [Doc. 20] is **GRANTED in part** as to plaintiff's claim against the State of Tennessee and as to plaintiff's claim for monetary relief against Ms. Lodge and Mr. Nicely;

2. The Second Motion to Dismiss filed by the State of Tennessee, Gina Lodge in her official capacity, and Gerald F. Nicely in his official capacity [Doc. 20] is **DENIED in part** as to plaintiff's claim for injunctive relief against Ms. Lodge and Mr. Nicely;

3. The Second Motion to dismiss filed by the firm defendants [Doc. 29] is **DENIED**; and

4. The Motion to Dismiss filed by Maximus [Doc. 7] is **DENIED**.

ORDER ACCORDINGLY.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE